## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **TEXAS ELECTRIC EQUIPMENT COMPANY, LTD.,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. _____** |
| **HARTFORD ACCIDENT AND INDEMNITY COMPANY,** | § § § | |
| **Defendant.** | § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff Texas Electric Equipment Company, Ltd. ("TEECO"), by its undersigned counsel, and for its Original Complaint would respectfully show the Court the following:

## I.
## JURISDICTION AND VENUE

1.    This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. 1332, in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

2.    Venue is proper in this district pursuant to 28 USC 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## II.
## PARTIES AND POLICY

3.     At all times relevant hereto, TEECO was a limited partnership organized and existing under the laws of the State of Texas, maintaining its principal place of business at 9401 Highway 225, La Porte, Texas.  As such, TEECO is a citizen of the State of Texas.

4.     At all times relevant hereto, Hartford Accident and Indemnity Company ("Hartford") was an insurance company organized under the laws of the State of Connecticut, and licensed to conduct business in the State of Texas.  At all relevant times, including at the time of the filing of this lawsuit, Hartford's principal place of business is and has been at 690 Asylum Avenue, Hartford, Connecticut.  As such, Hartford is not a citizen of the State of Texas.  Hartford may be served by and through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas  73136.

## III.
## FACTS

### A.     THE POLICIES ISSUED TO TEECO

5.     TEECO was the named insured under a series of consecutive commercial general liability insurance policies issued by Hartford.  These insurance policies  (collectively,  the  "Policies")  bear  numbers  61UENJA2116,

61UENHF4859, and 61UENHF4859, and provided continuous coverage to TEECO from January 1, 2017 thru January 1, 2020.

## B.    THE UNDERLYING LIABILITY LAWSUITS AGAINST TEECO

6.    This insurance coverage action arises out of a chemical fire and discharge (the "Occurrence") that occurred on August 31, 2017 at Arkema, Inc.'s ("Arkema") plant in Crosby, Texas (the "Arkema facility").   As a result of the Occurrence, residents of Crosby filed no fewer than *nine* lawsuits (collectively, the "Lawsuits"), including:

      a.    *Brice Abbott, et al. v. Arkema, Inc., et al.*, Cause No. 2019-60565, in the 165th District Court of Harris County, Texas;

      b.    *Bruce Abbott, et al. v. Arkema, Inc., et al.*, Cause No. 2019-61602, in the 61st District Court of Harris County, Texas;

      c.    *Auzenne, et al. v. Arkema, Inc., et al.*, Cause No. 2019-60384, in the 129th District Court of Harris County, Texas;

      d.    *Barrett, et al. v. Arkema, Inc., et al.*, Cause No. 2019-41357, in the 333rd District Court of Harris County, Texas;

      e.    *Crosby Church, et al. v. Arkema, Inc., et al.*, Cause No. 2019-61036, in the 113th District Court of Harris County, Texas;

      f.    *Deaton , et al. v. Arkema, Inc., et al.*, Cause No. 2019-58111, in the 189th District Court of Harris County, Texas;

      g.    *Graves, et al. v. Arkema, Inc., et al.,* Cause No. 2017-58465, in the 333rd District Court of Harris County, Texas;

      h.    *Graves, et al. v. Arkema, Inc., et al.*, Cause No. 2019-60480, in the 234th District Court of Harris County, Texas;

       i.      *Moran, et al. v. Arkema, Inc., et al.*, Cause No. 2019-59404, in the 189th District Court of Harris County, Texas;

In each of the Lawsuits, the plaintiffs have named TEECO as a defendant.

7.     The pleadings in the Lawsuits contain similar factual allegations. The plaintiffs allege that Arkema, with the assistance of various contractors and subcontractors, built and operated the Arkema facility.  The grounds around the Arkema facility flooded during Hurricane Harvey, causing electrical failures.  As a result of these electrical failures, the plaintiffs allege that the Arkema facility's cooling system failed, causing hazardous chemicals at the plant to explode and disburse into the air. The plaintiffs allege that they sustained serious bodily injuries and property damage due to the explosion.

8.     The plaintiffs in each of the Lawsuits blame the Occurrence on virtually everyone associated with the Arkema facility.  With respect to TEECO, the plaintiffs in several of the Lawsuits allege that:

> The electrical transformers at the [Arkema facility] were negligently designed.  Although the electrical transformers were pad mounted, they were not high enough off of the ground to be protected against potential flooding.  Based upon information and belief, when the electrical transformers were installed, [TEECO] . . . marketed the electrical transformers to be installed without considering the relevant topographical and environmental concerns of the installation area.  Further, there were no warnings on the electrical transformers regarding installing them in a high-risk flood area.

> Even after these electrical transformers were serviced and inspected, especially after previous major rain events such as Hurricane Ike, [TEECO] and/or Utility Defendants never raised or elevated the electrical transformers at the Crosby facility.

*See, e.g., Plaintiffs' Third Amended Petition*, filed in *Graves v. Centerpoint*, at p. 38. Although TEECO did not install any of the electrical transformers on the existing pads, the plaintiffs nevertheless allege that TEECO's delay in placing the electrical transformers on higher pads (*i.e. new* pads above floodwaters) was a direct cause of the explosion.

## C. HARTFORD'S DENIAL OF COVERAGE WITH RESPECT TO THE LAWSUITS

9.     Shortly after the plaintiffs filed the Lawsuits, TEECO forwarded the petitions to Hartford, and requested a defense. Hartford denied TEECO's request.

10.     Attached as Exhibit A is a copy of Hartford's denial letter.  Hartford's denial is based primarily[1] on a Pollution Exclusion contained in the Policies.  The Pollution Exclusion provides in pertinent part that liability coverage is not afforded for::

> **f. (1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

---

[1]     In addition to the Pollution Exclusion, Hartford relies on the Policies' "Expected of Intended Injury" exclusion.  *See Denial Letter* at p. 5.  In the Lawsuits' petitions, however, the plaintiffs do not allege that TEECO intentionally caused any of the damages of which the plaintiffs complain.  As such, Hartford's reliance on this exclusion is misplaced.

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

**(e)** To the extent that any such "bodily injury" or "property damage" is included in the "products-completed operations hazard".

The term "products – completed operations hazard" is defined in the Policies as follows:

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

---

**(2)**   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)**   When all of the work called for in your contract has been completed.

    **(b)**   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11.     In the denial letter, Hartford gave very little consideration to whether the plaintiffs' damages were included in the "products – completed operations hazard."   This term does *not* include damages from work that has not yet been completed or abandoned.  Considering that the plaintiffs complain that TEECO had not moved the electrical transformers to higher pads prior to Hurricane Harvey, the plaintiffs clearly indicate that they believe TEECO had the legal duty to do so, and breached that duty.  In light of the fact that the plaintiffs do *not* allege that TEECO

had completed or abandoned such work at the Arkema facility, Hartford's reliance on the pollution exclusion is misplaced.

## IV.
## CONDITIONS PRECEDENT

12.     Pursuant to Rule 9 of the Federal Rules of Civil Procedure, TEECO would respectfully show that all conditions precedent have occurred or been performed.

## V.
## CAUSES OF ACTION

**A.     BREACH OF CONTRACT.**

13.     TEECO incorporates by reference the allegations contained above in paragraphs 6 through 12.

14.     Hartford entered into valid and enforceable contracts (the Policies) with TEECO.  As such, TEECO has standing to enforce the Policies because it (TEECO) constitutes an insured and/or a third-party beneficiary under the insurance contracts.

15.     Hartford's failure and refusal, as described above, to defend or pay for the defense of TEECO in the Lawsuits constitutes a material breach of the Policies. Hartford's denial of the duty to indemnify TEECO also constitutes a breach of the insurance contract.  Hartford must reimburse TEECO for the reasonable attorney's fees incurred in the defense of the Lawsuits, and must also pay all such future fees.

To the extent a judgment is entered against TEECO, Hartford also must indemnify

TEECO for such judgment.

**B.    VIOLATION OF TEXAS INSURANCE CODE UNFAIR SETTLEMENT PRACTICES ACT**

16.    With respect to Tejas Specialty's claim for defense, Hartford:

    a.    Failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear. TEX. INS. CODE § 541.010 (a)(2)(A).

    b.    Failed to promptly provide to TEECO a reasonable explanation of the basis in the Policies, in relation to the facts and applicable law, for Hartford's denial of the claim. TEX. INS. CODE § 541.010 (a)(3).

**C.    VIOLATION OF PROMPT PAYMENT OF CLAIMS ACT**

17.    Hartford has violated Texas Insurance Code § 542.051 et. seq., also

known as the Prompt Payment of Claims Act.  Hartford is liable for the claim (*i.e.*

reimbursement of TEECO's defense costs) and had a statutory duty to pay the claim

in a timely manner.  Hartford breached the duty by not timely paying the claim after

wrongfully denying it.  Hartford's violation of the Prompt Payment of Claims Act

subjects Hartford to a statutory penalty and reasonable attorneys' fees, which will

continue to accrue until the claim is fully paid by Hartford.  TEX. INS. CODE §

542.060 (a).

## D. ATTORNEYS' FEES

18.     TEECO was forced to engage legal representation in order to redress its losses. TEECO is entitled to recover from Hartford its attorneys' fees arising out of this coverage dispute under multiple authorities.  *See* TEX. CIV. PRAC. REM. CODE § 38.001(8) (statutory basis for recovery of attorney's fees in breach of contract case); TEX. INS. CODE § 541.152 (a)(1) (prevailing plaintiff may recover actual damages, plus court costs and reasonable and necessary attorneys' fees); TEX. INS. CODE § 542.060(b) (if insurer is liable under Prompt Payment of Claims Act, reasonable attorney's fees shall be taxed as part of the costs).

## VI.
## <u>PRAYER FOR RELIEF</u>

TEECO respectfully requests judgment against Hartford as follows:

    A.    Declaring that Hartford has a duty to defend TEECO under the Policies in connection with the Lawsuits, and that Hartford breached its contract by wrongfully denying a defense;

    B.    Awarding TEECO reimbursement of all reasonable attorney's fees and costs incurred by TEECO in defense of the Lawsuits;

    C.    Awarding statutory penalties for Hartford's unfair settlement practices in violation of Texas Insurance Code § 541.010, including treble damages for this knowing misconduct.

    D.    Awarding TEECO statutory penalty for Hartford's violation of the Prompt Payment of Claims Act, Texas Insurance Code § 542.051;

    E.    Awarding TEECO reasonable and necessary attorney's fees and expenses incurred in this action;

F.  Awarding TEECO pre-judgment interest, post-judgment interest, and costs of suit;

G.  Awarding TEECO such other and further relief as the Court may deem appropriate.

Respectfully submitted,

*/s/  Mark D. Johnson*
Alexander N. Beard
Texas Bar No. 01970000
Mark D. Johnson
Texas Bar No. 10770175

SAUNDERS, WALSH & BEARD
Craig Ranch Professional Plaza
6850  TPC Drive, Suite 210
McKinney, Texas  75070
(214) 919-3555 Telephone
(214) 945-4060 Telecopier
Alex@SaundersWalsh.com
Mark.Johnson@SaundersWalsh.com

ATTORNEYS FOR PLAINTIFF

# EXHIBIT A

**Prepare. Protect. Prevail.**℠

**THE HARTFORD**

SCOTT T. GODKIN
*Claims Specialist*
Strategic Claim Management

Business Insurance
Employee Benefits
Auto
Home

The Hartford Financial Services Group
One Hartford Plaza
Hartford, CT 06155
Scott.Godkin@thehartford.com

October 18, 2019

SENT VIA REGULAR MAIL AND VIA EMAIL (ehoerner@teeco.net)

Ed Hoerner
Texas Electric Equipment Co.
PO Box 1378
LaPorte, TX 77572

|  |  |
|---|---|
| Entities Seeking Coverage: | Texas Electric Equipment Co. |
|  | HB Diversified, LLC |
|  | B&H Diversified, LLC |
| Policyholder: | Texas Electric Equipment Co. |
| Policies[1]: | <u>Primary Policies</u> |
|  | 61UENJA2116 (01/01/17 – 01/01/18) |
|  | 61UENHF4859 (01/01/18 – 01/01/19) |
|  | 61UENHF4859 (01/01/19 – 01/01/20) |
|  | <u>Umbrella Policies</u> |
|  | 61RHUKK1599 (01/01/17 – 01/01/18) |
|  | 61RHUHF4392 (01/01/18 – 01/01/19) |
|  | 61RHUHF4392 (01/01/19 – 01/01/20) |
| Lawsuits: | See Schedule A |

Dear Mr. Hoerner:

This letter is in response to the request for coverage tendered on behalf of Texas Electric Equipment Co. ("Texas Electric"), HB Diversified, LLC ("HB") and B&H Diversified, LLC ("B&H") in connection with the lawsuits listed in Schedule A (hereinafter collectively "Lawsuits").[2]  Please continue to forward correspondence in this matter to my attention.

## I.   <u>THE LAWSUITS</u>

---

[1] The Hartford issued earlier policies, however these policies would not apply since the Lawsuits involve damage and injuries that allegedly occurred following Hurricane Harvey in August 2017. If you disagree, please advise.
[2] It is our understanding that HB and B&H have not yet been named in the *Diane Deaton*, *Maria Moran*, *Crosby Church*, and *Bruce Abbott* lawsuits.

6461715_1 HHI

Ed Hoerner
Texas Electric Co.

The Lawsuits were brought by numerous plaintiffs and each allege the same essential facts, to wit, that Arkema, Inc.("Arkema") owned a facility located within a flood zone in Crosby, Texas, where it manufactured and stored highly volatile and combustible chemicals. According to the Lawsuits, uninterruptible electricity and refrigeration systems were required at the facility because of the highly volatile nature of the chemicals manufactured and stored there—a volatility which made the chemicals combust if they were not maintained at certain required temperatures. The Lawsuits allege that in August 2017, Hurricane Harvey struck Crosby and intensive flooding followed. That flooding allegedly led to the failure of the plant's electrical and refrigeration systems which then caused toxic chemicals to ignite and explode, thereby causing damage and/or injury to nearby residents, many of whom are plaintiffs in the Lawsuits. The Lawsuits allege that Texas Electric, and in some cases HB and B&H, are liable for the damage to property and/or injuries suffered by the plaintiffs because they refurbished, repaired, and/or maintained the TRPD02 Pad Mounted Electrical Transformer, Model No. 00567A68K30A, Serial No. 966001625 ("TRPD02 Transformer"), at the Arkema Crosby facility. The Lawsuits allege that TRPD02 Transformer was one of the electrical transformers that provided electricity to refrigeration systems at issue in the Lawsuits. Further, the Lawsuits allege that Texas Electric, and in some cases HB and B&H, did not have proper instructions and/or warnings accompanying its TRPD02 Transformer regarding the installation/placement of the electrical transformer within a flood zone and/or failed to comply with guidelines, best practices, rules, and/or regulations regarding the installation/placement and maintenance of its TRPD02 Transformer within a flood zone. The Lawsuits allege that as a result, Texas Electric's, and in some cases HB's and B&H's conduct contributed to the failure of the flow of electricity to critical facilities at the Arkema Crosby facility thereby contributing in causing the plaintiffs' damages and injuries.

## II.   PRIMARY POLICIES

Hartford Accident and Indemnity Company ("The Hartford") issued primary policy 61UENJA2116 to Texas Electric for the policy period 01/01/17 – 01/01/18 and primary policy 61UENHF4859 for the policy periods 01/01/18 – 01/01/19 and 01/01/19 – 01/01/20 (collectively, the "Primary Policies").  Please be advised that, under the Primary Policies, coverage does not exist for the Lawsuits for the reasons set forth below.

As an initial matter, we note that HB and B&H are not listed as named insureds on the Primary Policy and we have received no information that would establish that they would otherwise qualify as insureds under the Primary Policy.  As such, we must deny coverage for HB and B&H under the Primary Policy for the Lawsuit. If you have information/documentation you would like us to review to reevaluate our position with respect to HB and B&H, please provide it to the undersigned immediately.

The Primary Policies contain the following absolute pollution exclusion, contained in Form HC21231001, which replaces the pollution exclusions contained in Forms HG00010605 and HG00010916[3]:

---

[3] Coverage Form HG00010605 was included in Primary Policy 61UENJA2116 for the policy period 01/01/17 – 01/01/18; Coverage Form HG00010916 was included in Primary Policy 61UENHF4859 for the policy periods 01/01/18 – 01/01/19 and 01/01/19 – 01/01/20.

Ed Hoerner
Texas Electric Co.

**A.** It is agreed that Exclusion **f.** is replaced by the following:

**f.(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(e)** To the extent that any such "bodily injury" or "property damage" is included in the "products-completed operations hazard".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

**B.** The last paragraph of **Section I - Coverage A** (after the exclusions) is replaced by the following:

Exclusions **c.** through **e.,** and **g.** through **n.** do not apply to damage by fire, lightning or explosion to premises rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

The Primary Policies include the following or similar definitions found in Form HG00010605[4]:

**SECTION V- DEFINITIONS**

…

**5.** "Bodily injury" means physical:

**a.** Injury;

**b.** Sickness; or

**c.** Disease

sustained by a person and, if arising out of the above, mental anguish or death at any time.

…

---

[4] Coverage Form HG00010605 was included in Primary Policy 61UENJA2116 for the policy period 01/01/17 – 01/01/18; Coverage Form HG00010916 was included in Primary Policy 61UENHF4859 for the policy periods 01/01/18 – 01/01/19 and 01/01/19 – 01/01/20 and included substantially similar or identical definitions.

Ed Hoerner
Texas Electric Co.

**18.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**19.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**20.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    As used in this definition, computerized or electronically stored data, programs or software are not tangible property. Electronic data means information, facts or programs:

    **a.** Stored as or on;

    **b.** Created or used on; or

    **c.** Transmitted to or from;

    computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

The plaintiffs in the Lawsuits allege that Texas Electric, and in some cases HB and B&H, negligently refurbished, repaired and/or maintained critical electrical transformers at the Arkema facility. The Lawsuits allege that during and after intensive flooding caused by Hurricane Harvey, the facility's electrical and refrigeration systems failed which then caused toxic

Ed Hoerner
Texas Electric Co.

chemicals to ignite and explode, causing injury and/or damage to the plaintiffs' persons and their properties[5]. The Primary Policies's pollution exclusions excludes from coverage "bodily injury" and "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" to the extent that any such "bodily injury" or "property damage" is included in the "products-completed operations hazard." Accordingly, we must respectfully advise you that coverage is precluded for the Lawsuits under the Primary Policies based on the above cited pollution exclusions and The Hartford denies coverage for the Lawsuits on this basis. If you have any information that you feel would cause us to alter our position, please immediately submit that information and/or documentation for our review.

The Primary Policies also include the following expected and intended injury exclusion found in Forms HG00010605 and HG00010916[6]:

> **2. Exclusions**
>    This insurance does not apply to:
> **a. Expected Or Intended Injury**
>    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

The Hartford hereby denies coverage under the Primary Policies for any "bodily injury" or "property damage" to the extent that such "bodily injury" or "property damage" was expected or intended from the standpoint of Texas Electric or any insured.

## III.   UMBRELLA POLICIES

Hartford Casualty Insurance Company and Hartford Accident and Indemnity Company (hereinafter "The Hartford")) issued umbrella liability policy 61RHUKK1599 for the policy period 01/01/17 – 01/01/18 and umbrella liability policy 61RHUHF4392 for the policy periods 01/01/18 – 01/01/19 and 01/01/19 – 01/01/20 to Texas Electric (collectively, the "Umbrella Policies").  Please be advised that, under the Umbrella Policies, coverage does not exist for the Lawsuits for the reasons set forth below.

As an initial matter, we note that HB and B&H are not listed as named insureds on the Umbrella Policies and we have received no information that would establish that they would otherwise qualify as insureds under the Umbrella Policies.  As such, we must deny coverage for HB and B&H under the Umbrella Policy for the Lawsuit. As stated above, if you have information/documentation you would like us to review to reevaluate our position with respect to HB and B&H, please provide it to the undersigned immediately.

---

[5] The Lawsuits do not allege any causes of action which would fall within the "Personal and Advertising Injury" coverage of the Primary Policies and therefore the "Personal and Advertising Injury" coverage of the Primary Policies does not apply.

[6] Coverage Form HG00010605 was included in Primary Policy 61UENJA2116 for the policy period 01/01/17 – 01/01/18; Coverage Form HG00010916 was included in Primary Policy 61UENHF4859 for the policy periods 01/01/18 – 01/01/19 and 01/01/19 – 01/01/20.

Ed Hoerner
Texas Electric Co.

Further, the Umbrella Policies would not potentially respond unless and until the underlying insurance or self-insured retention has been properly exhausted.  Notwithstanding this, please be advised that the Umbrella Policies included the following pollution exclusion in Form XL00030605[7]:

**B.  Exclusions**

This policy does not apply to:

**1.  Pollution**

Any obligation:

**a.**  To pay for the cost of investigation, defense or settlement of any claim or suit against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the pollution hazard; or

**b.**  To pay any "damages", judgments, settlements, loss, costs or expenses that may be awarded or incurred:

   **i.**  By reason of any such claim or suit or any such injury or damage; or

   **ii.**  In complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion, pollution hazard means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal:

**a.**  Pollutants;

**b.**  Contaminants;

**c.**  Irritants; or

**d.**  Toxic substances;

Including:

Smoke;

Vapors;

Soot;

Fumes;

Acids;

Alkalis;

Chemicals, and

Waste materials consisting of or containing any of the foregoing. Waste includes materials to be recycled, reconditioned or reclaimed.

**EXCEPTION**

This exclusion does not apply:

**a.**  To "bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

**b.**  To injury or damage as to which valid and collectible "underlying insurance" with at least the minimum limits shown in the Schedule of Underlying Insurance Policies is in force and applicable to the "occurrence". In such

---

[7] Policy 61RHUKK1599 for the policy period 01/01/17 – 01/01/18 included coverage Form XL00030605; policy 61RHUHF4392 for the policy periods 01/01/18 – 01/01/19 and 01/01/19 – 01/01/20 include Form XL00030916. The cited pollution exclusion is identical in Form XL00030605 and XL00030916.

Ed Hoerner
Texas Electric Co.

event, any coverage afforded by this policy for the "occurrence" will be subject to the pollution exclusions of the "underlying insurance" and to the conditions, limits and other provisions of this policy. In the event that "underlying insurance" is not maintained with limits of liability as set forth in the Schedule of Underlying Insurance Policies, coverage under any of the provisions of this exception does not apply.

Exception **b.** does not apply to:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(1)** That are, or that are contained in any property that is:

    **(a)** Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

    **(b)** Otherwise in the course of transit by or on behalf of the "insured"; or

    **(c)** Being stored, disposed of, treated or processed in or upon any "auto":

**(2)** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

**(3)** After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph (1) above does not apply to lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

**a.** The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**b.** The "bodily injury,' "property damage" or "covered pollution cost or expense" does not arise out of the operation of any following equipment:

    **i.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment; and

    **ii.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers.

Paragraphs **(2)** and **(3)** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

**a.** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto", and

**b.** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

The plaintiffs in the Lawsuits allege that Texas Electric, and in some cases HB and B&H, negligently refurbished, repaired and/or maintained critical electrical transformers at the Arkema

Ed Hoerner
Texas Electric Co.

facility. The plaintiffs allege that during and after intensive flooding caused by Hurricane Harvey, the facility's electrical and refrigeration systems failed which then caused toxic chemicals to ignite and explode, causing bodily injury and/or property damage to the plaintiffs in the Lawsuits. The Umbrella Policies' pollution exclusions exclude from coverage the cost of investigation, defense or settlement of any claim or suit against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the pollution hazard, defined to include the harmful properties of toxic substances including chemicals. Accordingly, we must respectfully advise you that coverage is precluded for the Lawsuits under the Umbrella Policies based on the above cited pollution exclusion and The Hartford denies coverage on this basis.

The Umbrella Policies also include the following exclusion found in Forms XL00030605 and XL00030916:

> This policy does not apply to:
>
> …
>
> **14.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
> This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

In addition to the foregoing, The Hartford hereby denies coverage for any "bodily injury" or "property damage" under the Umbrella Policies to the extent that such "bodily injury" or "property damage" was expected or intended from the standpoint of Texas Electric or any insured.

## IV.   <u>GENERAL RESERVATIONS</u>

This communication is not intended to be and should not be construed as an exhaustive listing of all policy terms and conditions that may apply to this matter. The Hartford hereby reserves all its rights, positions and defenses in the matter. Neither this communication, nor any prior or subsequent communications, should be construed as a waiver of any rights, positions or defenses held by The Hartford.

The Hartford reserves the right to supplement and/or to amend its coverage positions should facts and circumstances indicate the need to do so. If there is any information or documentation that you would like us to consider, please immediately bring the same to my attention. Also, should you have any questions regarding the foregoing and/or should you wish to discuss this matter in general, please do not hesitate to contact me.

Sincerely,

Ed Hoerner
Texas Electric Co.

Scott T. Godkin
Strategic Claim Management
The Hartford Financial Services Group, Inc.
One Hartford Plaza | (T-14-CO)
Hartford, Connecticut 06155
(860) 547-4814
Scott.godkin@thehartford.com

cc:     John Dorsa (Via email only: johndorsa@pdq.net)
        Wes Kurtz (email only: wkurtz@pathfinderlld.com)

Ed Hoerner
Texas Electric Co.

## Schedule A

*Pelton Ray Barrett, et al. v. Arkema, Inc., et al.*
Cause No. 2019-43157, District Court, Harris County, TX

*Maria Moran, et al. v. Arkema, Inc., et al.*
Cause No. 2019-59404, District Court, Harris County, TX

*Diane M. Deaton, et al., v. Arkema, Inc., et al.*
Cause No. 2019-58111 District Court, Harris County, TX

*Crosby Church, A Fellowship of Believers, Inc. v. Arkema, Inc., et al.*
Cause No. 2019-61036 District Court, Harris County, TX

*Christy Graves, et al. v. Centerpoint Energy Inc., et al.*
Cause No. 2019-60480 District Court, Harris County, TX

*Bruce and Theresa Abbott, et al. v. Centerpoint Energy, Inc., et al.*
Cause No. 2019-61602 District Court, Harris County, TX

*Brice Abbott, Jr., et al. v. Arkema, Inc., et al.*
Cause No. 2019-60565 District Court, Harris County, TX

*Valerie Auzenne, et al. v. Arkema, Inc., et al.*
Cause No. 2019-60384 District Court, Harris County, TX

*Cristy Graves, et al. v. Arkema, Inc., et al.*
Cause No. 2017-58465 District Court, Harris County, TX